Good morning. Good morning, and may it please the Court, my name is Robert Freitas. I represent the Plaintiff and Appellant, ACP, Inc. I'd like to reserve two minutes for rebuttal. This appeal turns on the application of an undisputed and simple legal standard to undisputed facts in a Rule 12b6 context. The District Court didn't discuss the standard that governs. Instead, the Court assumed that it had to identify a single offeror and that it could not identify both parties as offerors. The District Court looked to three factual issues. Look, the way this arrangement was structured appears to me to be as follows, and correct me if I'm wrong, your client says, we're interested in making this acquisition or this investment. We want to start looking at you. We want to do due diligence, presumably. We want to have our accountants look at your statements. We want our business people to look at your business. And if the deal doesn't go down, we are asking that we be compensated for out-of-pocket costs. In summary, yes, Judge Parker, that is what was structured. And then does the record reflect or the pleadings reflect that you did anything, that you incurred out-of-pocket expenses? The allegations of the complaint are that full performance was provided. In other words, What does that mean in the context of this case? That means that the transaction was investigated. The promising question says that the expenses incurred in pursuit of the transaction will be reimbursed. The allegation of the complaint, which was And you weren't looking at reimbursement for professional fees or for The promise in the letter agreement is all out-of-pocket costs. The letter agreement mentions, among other things, retention of counsel, retention of Bain, and retention of PWC. That is spelled out in the letter agreement. But the facts that the district court looked at were three. The idea that the letter agreement was on the letterhead of ACP, the idea that the letter was delivered by ACP, and the idea that ACP was the apparent author. Are you characterizing this letter agreement as a bilateral agreement or a unilateral agreement? Our allegation, Judge Rawlinson, is that there is a unilateral contract. We don't contend that there's a bilateral contract. We agree that there are no binding promises that would suffice to support a bilateral contract. But on the three points But then the issue becomes whether or not this was an enforceable unilateral contract. Yes, Your Honor. And In your position, you prefer. Yes, Your Honor. So under the restatement second of contract, section 24, test for whether an offer is present, there are two simple requirements. The first is whether there's a manifestation of assent to a bargain, and the second is whether the manifestation is made so as to justify. But I thought your position was an offer was made by Sky Patrol, right? By the defendants. By the defendants in this case. Yes, and the So you're saying the letter agreement was somehow stemmed from an offer from the defendants? Our position precisely, Judge Rawlinson, is that the promise in the letter agreement that ACP's expenses would be paid was an offer to create a unilateral contract. An offer from whom? An offer from the defendants. When they signed the letter agreement saying that it was jointly and severally accepted and agreed and they returned that to ACP in doing so, under the section 24 standard adopted by the California Supreme Court in the Donovan case, that was a manifestation of their assent to enter into a bargain by which, if the transaction was investigated and expenses were incurred by ACP, that those expenses would be reimbursed. The one question I have, really, if it's a unilateral contract, usually that then has to be accepted without any further performance by the offeror. And here we have the conditional language throughout and we have various, what I would say, conditional events that have to take place. So how does that square with the unilateral contract theory? Those other events, Judge McKeown, relate to the broader transaction and the overall possibility that the investment would be completed. But the unilateral contract on which we rely involves a contract that they will pay the expenses incurred in pursuit of the transaction. It doesn't matter whether the deal goes forward, whether the investment is actually made. Is it fair to say it's kind of like a mini-contract within the broader scope? I think that's an accurate way to describe the situation. And do we have case law that says you can kind of carve out a part of something like that in a unilateral contract? We haven't cited a case that says that, Your Honor, but what we have is the section 24 standard. And that says, is there a manifestation? And was the manifestation made so as to justify an understanding on the other party that a bargain was invited? And in this context, Your Honor, the idea of the carve-out, I think that it is supported when you look at what is stated to be binding in the letter agreement. There are only two things that are stated to be binding, their promise to pay expenses and the exclusivity requirement. So inherently, in the letter agreement, there is a carve-out of sorts focused on those two items, that they will offer exclusivity and that they will pay the expenses. Those are the only two things identified in the letter agreement as binding. So I think that inherently, we have a situation like what you described, Judge McEwen, where there is a broader context and a narrower context. And there's no reason in the law why it wouldn't be possible to have a contract focused on the narrower promise. We will investigate. They will pay. This case arises under California law. So our responsibility is to predict how the California Supreme Court would rule on that issue. What law do we have in California that we can look to to tell us that the California Supreme Court would approve such an approach, a carve-out approach from a broader contract? What case can we look to in California that would help us? The Osmis case, 23 Cal 4th at page 10, adopted the basics of unilateral contract law. I don't think that it addressed that specific point. But in the Donovan case, the California Supreme Court did adopt the section 24 restatement second standard. And under that standard, all we need is a manifestation of assent to enter into a bargain made under circumstances that justify reliance. And we have that based on the promise to pay expenses that appears in the letter agreement. But isn't your position is there's really no necessity to even get to a carve-out issue, that the contract prima facie authorizes you to collect these expenses? That's true, Judge Parker, yes. And how does that square with the paragraph in the agreement called conditions? Our obligations in this letter are subject to da-da-da-da-da-da-da. So that refers to the obligation to go forward. So ACP wasn't obligated to make the investigation of the transaction, but the promise in the expense clause was if you do it, all the expenses you incur will be paid. But ACP wasn't required to do it. Did you want to reserve some time? Yes, Your Honor. Thank you. May it please the Court. My name is David Mackman. I'm here on behalf of Gordon Howard Associates. We're asking you to affirm the district court's decision dismissing this case with prejudice. There are four issues I would talk about. First, there's offer and acceptance. Second, there's consideration. Third would be promissory estoppel. And fourth would be leave to amend. With regard to offer and acceptance, we— We entered into a contract with these people. The contract was they were contemplating a $45 million investment in your client. And what the contract, as I read it, specifically contemplated—you can correct me if I'm wrong— that if they went forward and started their due diligence work and started the investigation and incurred expenses, those expenses would be reimbursed even if ultimately the transaction didn't close. Is that what you agreed to? That is the correct statement of the agreement. That is the correct statement of the agreement, yes. However, within the agreement— So you're in here in district court and here looking for help and basically welching on your contract as far as I can tell. I think they're welching on their contract as well. They committed to buy our company. They committed to make a good-faith effort to purchase the company, and they're not willing to go to the bilateral contract standard. There would be a bilateral contract standard here if they pled good faith, and that would be their promise, the promise of good faith and fair dealing. And we made the promise that they got from us through their illusory promise to investigate purchasing our company. Your theory is that in order to run up some fees, they didn't in good faith pursue this investment. That they used the increasing fees as leverage to lower their offering price and that they did not make a good-faith effort to comply with their obligations under the agreement, and that's why they're in unilateral contract land. Let me ask you about that. The agreement itself, if we call it a unilateral contract, does contemplate that this whole thing might not happen because it basically says they get reimbursed for their expenses in pursuit in the transaction, but in the event the transaction is not consummated, then you're going to put a ceiling on the expenses. So how does that figure in? Because it sounds there like, you know, right up front you're going to get this money, but you can't get more than X if it falls apart or doesn't happen. Well, that's what the agreement says. I don't see it as squarely in the unilateral contract doctrine because all of the unilateral contract cases we have involve agreements that were not negotiated. So the Avidity case says that where the promisee's reliance, and that would be ACP, is bargained for, the law of consideration applies. It's only where it's not bargained for that we're looking at promissory estoppel in unilateral contract. So, I mean, are you saying that their consideration for getting the fees would have to be a good-faith undertaking? To consummate the deal, yeah. And then would that be a factual issue? It might, but they've conceded that this is a plaintiff that does not want to have a lawsuit if they have to prove their own good faith, and that also bars out the promissory estoppel. Well, but they've asked to amend on promissory estoppel, haven't they? Promissory estoppel, yes, but not on bilateral contract. But why wouldn't it? It just seems odd to me to have a court not permit you to amend when you have a claim that you want to amend and there's no real prejudice to anybody. Why isn't that an abuse of discretion here? Oh, it's an equitable claim. There's no jury right. She's looked at the facts, saw the structure of the deal, and decided that from her position there is no claim in equity. Look, if you think that the fees were churned, that's a factual issue. That's not a 12B6 issue. And when they put in their fee application to document their expenses, you have added. But that's not 12B6. What I think is that there is no consideration, and under American contract law, consideration. There certainly is consideration. They performed the work. They've admitted that there's no consideration, and that's why we're in unilateral contract doctrine, and unilateral contract doctrines are a different kind of contract. You look at the Satriali case. These are promises that were made that were not bargained for. They're the master of their own offer. They could have put something in there that would have consideration. That's an important moment when I deal with clients and tell them, when you do an agreement, you want to be sure that you're not getting something for nothing, and that's the issue here. This isn't a case where someone was getting something for nothing, as far as I read the briefs and records here. They induced us to make this promise on a claim that they would, in good faith, purchase our company, and we made the promise. And they admit that that's not consideration, that they didn't commit to anything in their agreement. In terms of ultimately buying the company, no sane business person would make that promise going into a deal before they investigated the company. I mean, they would have to be crazy to say that. I disagree. I think there are many ways that they could have written this contract that there would be consideration. There is no obligation for them in the contract. The law of consideration is what it is, and I respectfully disagree. They could have put money in escrow. They could have a lot of things for consideration. Correct. Could have been given. But are you conceding that your client was the promisor in the unilateral contract? The promisor. There is a promise in the agreement, sure. Who made the promise? He made two promises. We accepted the offer, right? Did that constitute a promise on the part of your client? Sure. In consideration law, you have a promise on both sides. Our promise was exclusivity. I'm not talking about in the bilateral contract sense. I'm talking about in the unilateral contract sense. Who was the promisor? I don't think there was a unilateral contract. Because I think the process of bargaining. Sorry to interrupt. So if the only way you prevail in this case is if we decide that there was a failed bilateral contract? I think that's the way you should decide. Well, but do you lose if we disagree with you? I don't feel comfortable conceding that, but I'm not sure. But the district court said that ACP was the offeror of any alleged contract. Do you disagree with that? ACP was the offeror. Of any alleged contract. Yeah, it's on ACP letterhead. It says sign here where it says accept. That was the question she asked. Then I didn't understand your question. I'm sorry. Because I'm just reading now the district court says ACP was the offeror of any alleged contract. Okay. Yeah, they're the offeror. We were supposed to sign where it says accept. We did. That's the moment when you should look at whether there was consideration. That's when ACP says you became the offeror. When you signed the letter and accepted that you became the offeror under the unilateral contract. But that's counteroffer rules, and counteroffer, you have to change the agreement for it to turn to a counteroffer. We didn't make any change. We accepted, and that creates the contract. Thank you. Good morning. Paul Schwepp on behalf of Appaloose Sky Patrol. I think, Judge Rawlinson, you've identified exactly the issue. This is because it was an offer that purportedly was an accepted, the normal analysis would be, is this an enforceable bilateral contract? The district judge appropriately concluded, and this is why, Judge Parker, I understand your skepticism, but the conclusion is legally correct. It is not an enforceable bilateral contract, notwithstanding that it was accepted by Sky Patrol because there is a failure of mutuality of obligations. They could perform or not perform. They had no obligation, and our only obligation was to perform. That is not an enforceable bilateral agreement. And the plaintiff, as much as concedes that, that's why they retreat to unilateral contract. And to prevail as unilateral contract, whether it's under unilateral contract theory or promissory estoppel theory, they've got to turn this around and make the defendants the offeror. And what the district court found is that that cannot be plausibly alleged under 12b-6 because the court and plaintiff conceded this was appropriate, analyzed the terms of the letter itself and found that this was an offer that came from the plaintiff's mouth and it was not the defendant's offer. So if the Brooklyn Bridge analogy is the analogy to go back to first-year law school that sort of is the touchstone for determining the enforceability of a unilateral contract, the offeror says, I'll walk across the Brooklyn Bridge and you pay me. But it's not, they in this case are saying, we'll work or we may not work, but you must pay us. So the obligations only run in one direction. That offer needed to come from us, and when the letter is examined, it's an offer that came from them and it didn't come from the defendants. The court's order, she says that to make a promissory estoppel argument, they claim that they will show that Gordon Howard is the offeror, turning it around, and it's either one or the other. Is there a factual issue on that or no? No, Your Honor, for this reason. Because under the ICBAL standard, the letter is the touchstone, and what the district court found is that this plaintiff cannot plausibly try and turn this into an offer from defendants because when you look at the letter, everything about it reflects that this is the plaintiff's offer, and what they're offering is we will do this work or we may not, and your only obligation is to pay. So it fails as a bilateral contract. The district court's reading of this contract is entitled to no deference. Is that right? Conceded. Conceded. It's a 12B6. It's a de novo review standard. But I would also add that the plaintiff's allegations about how to read the letter are also entitled to no deference. It's for this court. Neither are yours, right? Yes.  A hundred percent, Judge Barford. It's for this court to analyze in terms of the letter. But we would submit that the district court was correct in concluding that an analysis of the letter reflects that it cannot be plausibly asserted that the defendants made that offer, and if the offer did not emanate from the defendant's mouth, it is not an enforceable unilateral contract because otherwise it could be, you know, I'll ship you a tie and guess what, you have to pay. That's an unenforceable unilateral contract because they would make that, the plaintiff would make that deal every day. We may do the work, we may not, and you have to pay for it. And a lot of, I'm sorry, I'm out of time. But the difference in this situation is you're wearing the tie. That's a fair comment, Judge. On the other hand, the transaction didn't close, and the letter makes it very clear that the plaintiff wanted no obligations to be imposed on it and all the obligations to be the other direction. It's a substantial deal. You can't guarantee you're going to close this deal until you do the deal. I mean, most deals don't go anywhere. The court's recognizing the realities of the business world, and that's appropriate. But it's also true that a lot of time is invested in due diligence, in these deals that don't go forward, and it's not the potential acquisition target that has to pay those costs. But you have to look at the consideration at the time the offer is made. When the offer is made, what is the consideration that's tendered at that time? A hundred percent, Your Honor. I think the court's got, the touchstone is the agreement, and at that point in time was there consideration. And I think the plaintiff is but conceding a lack of consideration by saying you cannot analyze this as a bilateral agreement. You have to look at it as a unilateral agreement. And if they're in that world, then it would impose an obligation on the defendants only if the defendants were the offeror. And that's an issue that the plaintiff cannot plead around, given the language of the letter. That's the point we're trying to make. Thank you. Thank you so much for giving me time. Thank you. Would you address what you proffer to the district court that somehow you would show that Gordon Howard was the offeror? How would you do that? In simple terms, Your Honor, what we do is we rely on the explicit promise they made to pay the expenses. It's in the agreement. So in other words, it's the piece of paper, nothing else, that the court already ruled on? It's the piece of paper is where the promise is made, Your Honor. However, there is a context surrounding that. And if we were to amend, what we would do is we would add the broader context. One of the things that we would allege is that, as Judge Parker's questions suggest, there wouldn't have been an investigation without the promise on which we rely. That's the way these things get done. An investment in this amount, $45 million, wouldn't get made without an investigation. But that has to do with business. I mean, that's part of what happens. Well, what we would allege if we amended to address the questions that have been raised, we would specifically allege that there wouldn't have been a transaction, there wouldn't have been an investigation, absent their promise to reimburse the expenses. But that's just another way of saying they were the offeror, and the court already ruled on that, though. Well, the district court said that there was only one offeror. The district court was wrong, in part because the district court didn't apply the correct standard. Your articulated amendment wouldn't change the legal analysis that the district court engaged in. It might not, Your Honor, but what it would do is support what we have to say about the application of the Restatement Second, Section 24 standard, explaining that there's no doubt they made a manifestation, they admit it. But there's three other things they said. First, there was a suggestion that ACP didn't pursue the transaction in good faith. That's a defense. It doesn't support dismissal of the complaint. Second, both lawyers said there was no consideration. We have a basic misunderstanding of the law here. Well, you said that. When I asked you whether or not there was a bilateral contract, you said it couldn't be a bilateral contract because there was no consideration at the time the contract was tendered. There was no binding promise. But in a unilateral contract, in a unilateral contract, Your Honor, the consideration that's provided by the promisee is performance. In the Brooklyn Bridge hypothetical, walking across the bridge, that's the performance, that's consideration. But there first has to be an offer. Yes, there does, Your Honor. That's right. Yes. And in this case, we have one in writing. And that's the last point I wanted to address. The idea that there can only be one offeror has no substance to it. It's just not a proper application of Section 24. There might, there could be more than one offeror. But under this piece of paper we're looking at, there's one offeror, isn't there? Well, actually, that's not, that's, well. Hypothetically, there could be. But you can't just say because there could be, therefore, we should go back and you'll end up right back where you were. Oh, no, Your Honor. We're saying something very different. First of all, the district court held that there was no offer by ACP. Yes, the district court labeled ACP the offeror, but the district court held, and it's correct, that there are no binding promises made by ACP. So how could ACP be the sole offeror if it didn't even make any binding promises? And that's undisputed. So on the one hand, we're told ACP is the only offeror. On the other, we're told ACP didn't even make an offer because it didn't choose. So if ACP didn't make an offer, where does that leave us in terms of contract formation? Where it leaves us is the written promise they made to reimburse the expenses meets the Section 24 standard for a manifestation of assent, and the assent is if you do the investigation, we will reimburse your expenses. Their written promise to reimburse the expenses is a manifestation of assent, which was accepted under the allegations of the complaint by performance in the form of investigating the transaction. It's a very simple application. Okay, I think we have your arguments in mind at this point. Thank you to all counsel. The case just argued, ACP v. Sky Patrol, will be submitted. Thank you.
judges: Parker, McKeown, Rawlinson